```
       IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF ALABAMA
                NORTHERN DIVISION


CLARENCE BROOKS,                     :
                                     :
     Plaintiff,                      :
                                     :
vs.                                  :    CIVIL ACTION 10-0612-M
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of Social Security,     :
                                     :
     Defendant.                      :
```

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 20). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 27). Oral argument was waived in this action (Doc. 28). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-four years old, had completed a high school education (Tr. 224), and had previous work experience as a heavy equipment operator, pipe layer, and fish harvester (Tr. 224-228). In claiming benefits, Brooks alleges disability due to the following impairments: open proximal radial and ulnar fractures; major soft tissue injury avulsion right forearm; ulnar nerve as well as median nerve injury; complex Olecranon fracture; osteoarthritis; severe osteoarthritic change in right elbow; hypertension; severe right ulnar neuropathy; and mild right carpal tunnel syndrome (Doc. 21).

The Plaintiff filed protective applications for disability benefits and SSI on August 1, 2007 (*see* Tr. 11; Tr. 108-14). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his past relevant work, Brooks was capable of performing specific limited light work jobs (Tr. 11-22). Plaintiff requested review of the hearing decision (Tr. 6-7) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Brooks alleges that: (1) The ALJ did not properly consider his complaints of pain; (2) the ALJ did not pose a proper hypothetical question to the vocational expert (hereinafter *VE*); (3) the ALJ did not properly assess his residual functional capacity (hereinafter *RFC*); and (4) the ALJ did not conduct a full and fair hearing (Doc. 20). Defendant has responded to—and denies—these claims (Doc. 22). The relevant evidence of record follows.

On July 15, 2007, Brooks was admitted to the University of Alabama, in Birmingham, Hospital for a shotgun blast to the right elbow for which he underwent irrigation and debridement as well as placement of the external fixator as there was an Olecranon fracture (Tr. 167-85). Plaintiff had extensive soft

tissue damage which required skin grafting and ulnar nerve repair. Brooks was discharged, after having undergone physical therapy, with a splint on his right upper extremity and a prescription for Lortab.[1] Plaintiff was noted to have "decreased sensation on ulnar nerve distribution with decreased little finger flexion;" he had "3/5 strength in all of his muscles in [the] lower extremity [but] full range of motion in the shoulder and wrist" (Tr. 180).

On August 8, 2007, Brooks was seen by Dr. Rena L. Stewart who noted that he was "doing tremendously well" (Tr. 187). "All of the skin grafts are beautifully taken, his pain is diminishing, and he is already establishing a good early range of motion" (*id.*). Stewart noted no ulnar nerve function, though he had intact median and radial function; his hand was "still quite weak" (*id.*). Plaintiff's elbow range of motion was from 45 – 85 degrees; the shoulder was completely normal.

On September 24, 2008, Brooks was seen in the emergency room at Vaughn Regional Medical Center for right arm swelling and numbness; he was also unable to straighten out his right middle, ring, and fifth fingers (Tr. 192-99). Plaintiff was diagnosed as having right arm atrophy and neuropathy so was

---

[1]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."

given a prescription for Toradol.[2]

On June 2, 2009, Dr. Huey Kidd, D.O., noted that x-rays of Brooks's right arm revealed "a plate extending the proximal third of the ulnar into the elbow. The elbow joint appears fixed. The elbow joint has osteoarthritic changes and very little joint space. The patient does have motion[;] however there is severe osteoarthritic change" (Tr. 203).

On June 22, 2009, Neurologist Walid W. Freij examined Brooks who had elevated blood pressure but was in no acute distress (Tr. 204-16). Plaintiff had a defect over the right elbow, covered in a skin graft, which was numb to pinprick and light touch sensation; he had no limitations in the cervical, thoracolumbar, or lumbarsacral spine. Brooks had difficulty extending his fingers up. Strength was _/5; he had difficulty making a fist, extending and flexing the hand at the wrist and strength is estimated to be 2/5. Atrophy was noted in the Interosseous muscles and in the FDI and ADM muscles. The doctor's assessment was: "(1) severe right ulnar neuropathy at the elbow as demonstrated by the examination, but also as demonstrated by a NCV/EMG test that was done [and] (2) mild

---

*Physician's Desk Reference* 2926-27 (52nd ed. 1998).
　　[2]*Toradol* is prescribed for short term (five days or less) "management of moderately severe acute pain that requires analgesia at the opioid level." *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

carpal tunnel syndrome affecting the sensory component.  This is proven on the NCV test" (Tr. 206).  Dr. Freij went on to state that Brooks "would not be able to do physical work with his right upper extremity.  He is not able to use the hand at all in terms of gripping, holding things, pulling or pushing.  He is able to use the left upper extremity and is able to stand and walk" (Tr. 206).  The Neurologist completed a physical capacities evaluation in which he indicated that Plaintiff was able to sit, stand, and walk for up to eight hours at a time and during a workday; noting weakness and atrophy in the right hand, the doctor declined to say how much weight Brooks could lift or carry (Tr. 210-11).  The doctor noted that Plaintiff could never use his right hand for reaching, handling, fingering, feeling, pushing or pulling but could do so continuously with his left hand; there were no restrictions in using his feet.  Brooks could stoop, kneel, and crouch frequently, climb stairs, ramps, ladders, or scaffolds and balance occasionally, but could never crawl (Tr. 213).  While Plaintiff could frequently be exposed to moving mechanical parts, he could only occasionally be exposed to unprotected heights, operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, and extreme heat or cold; the doctor further noted that extreme heat or cold

would increase Plaintiff's pain in his right upper extremity (Tr. 214). Dr. Freij indicated that Plaintiff had suffered these limitations and had had these abilities since 2007.

Brooks testified at the evidentiary hearing that he has no feeling in his right hand and can only barely grasp objects (Tr. 228-). He has numbness and sharp pain in his elbow and, sometimes, it swells at night, causing pain in his thumb. During the day, while trying to play with his baby, he experiences pain at a seven on a scale of ten which lasts for about thirty minutes; this happens three times a day every day. Tylenol and over-the-counter medications do not help; his doctor would not prescribe medication for the pain (Tr. 230). He can use two fingers on his right hand for picking up small objects or buttoning his shirt. Plaintiff does not have trouble using his left arm though it bothers him some from using it so much. Brooks said that he could lift about twenty pounds and stand for twenty minutes at a time and up to three hours during an eight-hour day; he could sit for thirty minutes at a time and three and one-half hours during an eight-hour day. Plaintiff could walk for ten minutes at a time, but up to five hours a day. He said that he did not do any yard work or any tasks around the house. He gets headaches three times a week which last for up

to one hour if he lies down and takes some Tylenol; he also has elevated blood pressure. Brooks testified that he could not tie his shoes or put on his belt without help; he does not drive.

Renee Smith testified as a VE that she had reviewed the record in this case and had been present for the testimony given at the hearing (Tr. 242-51). She testified that, if Plaintiff's testimony at the hearing were believed, he would not be able to perform any of his past work as those jobs were at least medium level work. When the ALJ asked if Plaintiff could do any work, the VE listed specific sedentary and light works jobs. The ALJ then posed a hypothetical question, based on the physical capacities evaluation completed by Dr. Freij, with specific limitations to which the VE said his previous response was still applicable (Tr. 247; *cf*. Tr. 211-14).

In his determination, the ALJ found that Brooks could perform less than a full range of light work (Tr. 14). In making this determination, he gave substantial weight to the opinions and conclusions of Dr. Freij and found that Plaintiff's testimony of pain and limitations was not supported by the evidence of record (Tr. 18). The ALJ then found, based on the VE's testimony, that there were specific jobs which Brooks could perform (Tr. 21). This concludes the evidence of record.

Brooks first claims that the ALJ did not properly consider his complaints of pain (Doc. 20, pp. 2-4). The Court notes that the standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms

> will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2010).

The Court notes that the ALJ found that Brooks experiences a moderate degree of pain (Tr. 14). However, he further found that Plaintiff's allegations of disabling pain were not credible, pointing to the report of Dr. Freij whose physical capacities evaluation expressed the opinion that Plaintiff was capable of working; this determination was made after a physical examination and nerve conduction studies. Though finding that Brooks was limited in using his right upper extremity, and noting that certain things would exacerbate the pain he suffered, the Neurologist clearly found that Plaintiff was able to work.

The ALJ also noted that Plaintiff's own testimony regarding his daily activities demonstrated that his pain was not as limiting as alleged (Tr. 19). The Court notes that Brooks

10

testified that he could lift twenty pounds, sit for three and one-half hours and walk for five hours during an eight-hour day; this is not indicative of a person with debilitating pain. The Court further notes that Plaintiff has asserted that he had to take Lortab because of the pain (Doc. 20, p. 4), but Brooks testified that he had had to use over-the-counter medications because his doctor would not prescribe pain medications (Tr. 230). Furthermore, while Dr. Kidd may have noted severe osteoarthritic change (Doc. 20, p. 4; *see also* Tr. 203), he Kidd did not find that Plaintiff was disabled. In fact, no doctor found that Brooks was disabled, because of his pain or otherwise. Plaintiff's assertion that the ALJ did not properly evaluate his allegations of pain is without merit.

Brooks next claims that the ALJ did not pose a proper hypothetical question to the VE (Doc. 20, pp. 6-7). More specifically, Plaintiff asserts that the ALJ's proposed queries to the VE did not reference his headaches or hypertension. The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d

11

1561 (11th Cir. 1985).

The Court notes that the record is, essentially, devoid of information regarding hypertension or headaches. While Brooks did tell Dr. Freij that he was on hypertension medication (Tr. 204) and testified that he has high blood pressure and that headaches require him to lie down three times a week (Tr. 239), Plaintiff has failed to point to any medical evidence of such (*see* Doc. 20). In providing information to the Social Security Administration, Plaintiff stated that he took high blood pressure medication,[3] but did not indicate that it was uncontrolled or a reason he was seeking disability; rather, those documents shows that Brooks was seeking benefits because of his right arm injury (*see* Tr. 132-58; *see specifically* Tr. 136-37, 152, 154-56). Again, the Court notes that there is no medical evidence of uncontrolled hypertension or debilitating headaches. As such, the Court finds that the ALJ's failure to include these impairments in the hypothetical to the VE was reasonable. Brooks's claim otherwise is without merit.

Plaintiff next claims that the ALJ did not properly assess his RFC (Doc. 20, pp. 5-7). Brooks specifically asserts that the ALJ failed to take into consideration his complaints of

---

[3]In one place, though, the record states that the medication was

pain, uncontrolled hypertension, and need for Lortab when reaching his RFC determination.

The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2010). In his decision, the ALJ found that Brooks had

> the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant has the following non-exertional limitations: He can never use his right dominant hand for repetitive action such as in simple grasping, the pushing and pulling of arm controls, and for fine manipulation. He can continuously use his left hand for repetitive action such as in simple grasping, the pushing and pulling of arm controls, and for fine manipulation. He can continuously use his feet for repetitive movement such as in the pushing and pulling of leg controls. He can occasionally climb and balance; frequently stoop, kneel, and crouch; and never crawl. He can never reach overhead with his right hand, but continuously reach overhead with his left hand. He can frequently work around moving machinery, and occasionally work around unprotected heights, drive automotive equipment, and exposure [sic] to marked changes in temperature and humidity. He experiences a moderate degree of pain.

(Tr. 14). The Court finds substantial support for the ALJ's determination retarding Plaintiff's RFC. These findings were

---

for pain and only taken as needed (Tr. 136).

reached by Neurologist Freij after examination and testing. No other medical evidence is in conflict with these conclusions. Furthermore, the Court has already found that Brooks's claim regarding his pain and limitation was without merit. It gains no further strength in its association with this claim.

Plaintiff's final claim is that the ALJ did not conduct a full and fair hearing (Doc. 20, pp. 7-8). More specifically, Brooks asserts the following: "Mr. Brooks was late arriving to the hearing. Upon explaining Mr. Brooks's tardiness to the ALJ, the ALJ responded that the hearing could proceed without the claimant, as he could not see how his testimony would be relevant to the claim because this case only involved one arm being impaired" (Doc. 20, p. 8). Brooks notes that the statement did not appear in the record and reveals the ALJ's bias. The Court notes that the Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court finds no merit in this claim. Even if the improper statement was made, the medical evidence does not support a finding of disability or that any of the ALJ's

14

decisions was improperly reached. Brooks has not demonstrated any legal error in the ALJ's decision.

Plaintiff has raised four different claims in bringing this action. All have been found to be without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 11th day of July, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE